Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 08 2014, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL B. TROEMEL**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE )
INVOLUNTARY TERMINATION OF )
THE PARENT-CHILD RELATIONSHIP )
OF S.J.L. AND J.L., MINOR CHILDREN, )
AND THEIR FATHER, S.L., )
)
S.L., )
)
    Appellant-Respondent, )
)
    vs. )    No. 79A02-1403-JT-205
)
INDIANA DEPARTMENT )
OF CHILD SERVICES, )
)
    Appellee-Petitioner. )

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Faith A. Graham, Judge
Cause Nos. 79D03-1311-JT-60, 79D03-1311-JT-61

**October 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Respondent S.L. ("Father") appeals the juvenile court's order terminating his parental rights to his two sons, S.J.L. and J.L. (collectively, "the Children"). Father argues that the juvenile court's findings of fact do not support its conclusion that Appellee-Petitioner the Indiana Department of Child Services ("DCS") has a satisfactory plan for the care and treatment of the Children. The juvenile court found adoption to be the plan for the Children, and Father does not challenge this finding. Because adoption is a satisfactory plan, we affirm.

## FACTS AND PROCEDURAL HISTORY

The underlying facts of this case were set forth in the juvenile court's February 26, 2014 order terminating Father's parental rights to the Children. Father does not challenge these findings of fact.

> 1. [S.B.L.] (DOB 06/02/1977) is the mother and [S.L.] (DOB 08/08/1980) is the father of [S.J.L.] (DOB 05/23/2000) and [J.L.] (DOB 05/26/2001).
>
> 2. In 2003, Mother and Father were involved in a [Child in Need of Services ("CHINS")] proceeding regarding the children in Illinois due to physical abuse and neglect. [S.J.L.] suffered substantial scarring on the lower half of his body and two (2) toes were amputated as a result of being placed in a pot of boiling water. Father was convicted of Attempted Murder for the incident and remains incarcerated. Mother reportedly pled guilty to Child Endangerment. The children remained in foster care for approximately three (3) years before returning to Mother's care in 2006. Mother relocated to Lafayette, Indiana in 2007. Records reveal that Mother failed to follow through with postoperative appointments regarding [S.J.L.'s] burns as recently as 2010.
>
> 3. [DCS] filed an initial petition in December 2012 under Cause Nos. 79D03-1212-JC-164/165 alleging Mother's inability to appropriately manage the

children's behaviors and maintain their mental health as well as inappropriate physical discipline. DCS filed a second petition in February 2013 under Cause Nos. 79D03-1302-JC-20/21 alleging sexual abuse by Mother. These combined CHINS proceedings resulted in the present termination hearing and will hereinafter be referred to as the CHINS cases.

4. The children were placed in protective custody pursuant to a Detention Hearing Order dated December 17, 2012. A [Court Appointed Special Advocate ("CASA")] was appointed to represent the best interests of the children. The children were found to be [CHINS] and dispositional orders were issued on February 15, 2013 in Cause Nos. 79D03-1212-JC-164/165 and on April 25, 2013 in Cause Nos. 79D03-1302-JC-20/21. The children have remained out of the parents' care continuously since the time of detention.

\*\*\*

7. A permanency hearing was held on November 1, 2013 at which time the permanent plan was determined to be the initiation of proceedings for termination of parental rights and adoption. DCS filed its petitions in the above-referenced cause on November 1, 2013. The evidentiary hearing on the Verified Petitions to Terminate Parental Rights was held on January 10, 2014. At the time of the termination hearing, the circumstances of the parents had not improved. Mother remained non-compliant and Father remained incarcerated.

8. Prior to the CHINS cases, [S.J.L.] was admitted for psychiatric treatment in January 2012, February 2012, and October 2012. [S.J.L.'s] placements during the CHINS cases include foster care (12/14/2012 to 10/05/2013) and then Emergency Shelter Care (10/05/2013 to 10/25/2013) followed by therapeutic foster care since 10/25/2013.

9. Prior to the CHINS cases, [J.L.] was admitted for psychiatric treatment in December 2010, June 2011, July 2011 to September 2011, and October 2011. [J.L.'s] placements during the CHINS cases include foster care (12/17/2012 to 04/08/2013) followed by acute residential placements at Harsha Behavioral Center (04/08/2013 to 04/23/2013) and the Community Hospital North (04/23/2013 to 06/04/2013). [J.L.] was placed at Evansville Psychiatric Children's Center on June 4, 2013 and remains there today.

10. During the CHINS cases, the children participated in evaluations, counseling, case management, and medication management services. The children were also provided therapeutically supervised sibling visitation as recommended by the children's therapists. Sibling visitation appeared to trigger both children regarding past traumas resulting in a negative reaction for the children. Therefore, sibling contact has been limited. The children also

reacted negatively to contact with Mother and requested that visits cease. One therapist working with the family in 2011 opined that Mother is "literally driving the boys crazy". The Court granted the children's requests and suspended Mother's visits.

11. [S.J.L.] was diagnosed with Schizophrenia (Undifferentiated Type), Depressive Disorder NOS, and ADHD by Dr. Vanderwater-Piercy after a thorough psychological evaluation conducted in January 2013. [S.J.L.] has an extensive history of both inpatient and outpatient mental health treatment. [S.J.L.'s] need for ongoing mental health treatment will require a very structured, stable and quiet living environment with established routine, clear expectations, close supervision, and monitoring. At the time of evaluation, it was questionable whether a home environment would be sufficient or whether residential treatment would be necessary given [S.J.L.'s] extreme impairment in adaptive functioning.

12. [J.L.] also received a thorough psychological evaluation by Dr. Vanderwater-Piercy in January 2013 and was diagnosed with Schizophrenia (Undifferentiated Type) and ADHD. [J.L.'s] primary symptoms and treatment recommendations were very similar to [S.J.L.'s]. [J.L.] also displayed extreme impairment in adaptive functioning.

13. The mental health diagnoses of the children appear to be exacerbated by a significant history of neglect as well as physical, emotional, and sexual abuse. Both children had been "home-schooled" for the past three (3) years and are behind educationally functioning at a 3rd or 4th grade level. [S.J.L.] ran away several times prior to removal. Both children have had suicidal ideations and [J.L.] attempted suicide more than once during the CHINS cases. The children, especially [S.J.L.], have made some progress in treatment addressing these issues.

14. [S.J.L.] disclosed sexual abuse by Mother during a videotaped interview in January 2013. [S.J.L.'s] disclosures were corroborated by specific details noted in [J.L.'s] statements. [J.L.] initially denied sexual abuse during a videotaped interview in January 2013 although he did report being tied up or bound by Mother. [J.L.] later disclosed acts of sexual abuse by Mother. Although no physical evidence of sexual abuse was located and Mother was not criminally charged with sexual abuse, Mother admitted making the children stand outside on the balcony and also admitted videotaping the children taking off all their clothes because they "steal" and hide things in their "junk."

***

4

18.  Father is currently incarcerated in the Illinois Department of Correction with an earliest projected release date in March 2022.  Father has been incarcerated since May 2003 having been convicted of Attempted Murder of the child, [S.J.L.].  Father has been diagnosed with Paranoid Schizophrenia and Bipolar Disorder.  Father is not taking any medications at this time.  Father has participated in services available during his incarceration and maintained appropriate communication with DCS.

19.  Father does not support reunification of the children with Mother at this time although he supported such reunification in the past.  Today, Father stated a belief that Mother is mentally ill and needs treatment herself before she is able to care for the children.

***

21.  CASA, Devon Moore, supports termination of parental rights in the best interest of the children.  CASA notes Mother has made no efforts toward reunification with the children.  Father remains unavailable for an extended period due to incarceration.  CASA agrees the children have special mental health needs and that permanent separation from Mother is necessary for the children to make positive progress in their mental and emotional well-being.

22.  The plan for the children upon termination of parental rights is adoption.  Given the children's special needs, it is entirely possible that the children will not be adopted together as a sibling group.  DCS acknowledges that adoption may be difficult to attain for these children, particularly [J.L.].  If adoption does not occur, another planned permanent living arrangement will be utilized. [S.J.L.'s] current therapeutic foster home has already expressed a willingness to continue his foster placement long-term as needed.  These children are so reluctant to return to Mother's care that they are likely to take their own lives if they are reunified.

Appellant's App. pp. 52-55.

On these facts, the juvenile court terminated Father's parental rights[1] to S.J.L. and J.L., concluding there to be a reasonable probability that the conditions that resulted in the removal of the Children will not be remedied and that continuation of the parent-child relationship poses a threat to the well-being of the Children.  The juvenile court also

---

[1] The juvenile court also terminated Mother's parental rights to S.J.L. and J.L.; however, Mother does not join in this appeal.

5

concluded, "DCS has a satisfactory plan for the care and treatment of the children following termination of parental rights. There is reason to believe an appropriate permanent home has or can be found for the children." Appellants' App. p. 55.

**DISCUSSION AND DECISION**

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the child's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id.* Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

(A) one (1) of the following exists:

6

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2011).

Father challenges the sufficiency of the evidence to support the juvenile court's termination of his parental rights. In reviewing termination proceedings, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*. In

7

deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

### Whether There Is a Satisfactory Plan for the Care and Treatment of the Children

Father argues that the juvenile court clearly erred in concluding that there is a satisfactory plan for the care and treatment of the Children. In support of its conclusion, the juvenile court found as follows:

> The plan for the children upon termination of parental rights is adoption. Given the children's special needs, it is entirely possible that the children will not be adopted together as a sibling group. DCS acknowledges that adoption may be difficult to attain for these children, particularly [J.L.]. If adoption does not occur, another planned permanent living arrangement will be utilized. [S.J.L.'s] current therapeutic foster home has already expressed a willingness to continue his foster placement long-term as needed.

Appellant's App. pp. 54-55. Father does not challenge the above-stated finding but, rather, claims it presents too much uncertainty to support the trial court's determination that adoption is a satisfactory plan. We disagree.

For a plan to be "satisfactory," it "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 374 (Ind. Ct. App. 2007); *see Matter of Miedl*, 425 N.E.2d 137, 140-41 (Ind. 1981). Adoption is

8

clearly a satisfactory plan, and the fact that there is not a specific family in place to adopt the children does not make the plan unsatisfactory. *Lang*, 861 N.E.2d at 375. The issue of a satisfactory plan is not concerned with the particular placement but, rather, with the fact that DCS has a goal in place to achieve permanency. *See In re D.J.*, 755 N.E.2d 679, 685 (Ind. Ct. App. 2001); *In re B.D.J.*, 728 N.E.2d 195, 204 (Ind. Ct. App. 2000); *In re M.B.*, 638 N.E.2d 804, 808 (Ind. Ct. App. 1994). The fact that there may be difficulty in attaining adoption for the Children does not render adoption an unsatisfactory plan.

The judgment of the juvenile court is affirmed.

KIRSCH, J., and MAY, J., concur.