**In re the Matter of the Termination of the Parent–Child Relationship of B.D.J., B.O.J., K.M.G., Minor Children.**

**Bryan Jones, Appellant–Respondent,**

v.

**Gibson County Division of Family and Children, Appellee–Petitioner.**

No. 26A01–0001–JV–22.

Court of Appeals of Indiana.

May 3, 2000.

James G. McDonald, III, Princeton, Indiana, Attorney for Appellant.

Jerry D. Stilwell, Princeton, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge.

### *STATEMENT OF THE CASE*

Appellant–Respondent, Bryan Jones (Jones), appeals the trial court's order terminating the parent-child relationships between Jones and his daughter, B.D.J., son, B.O.J., and daughter, K.M.G. (collectively "Children").

We affirm.

### *ISSUE*

Jones raises two issues on appeal, which we consolidate and restate as: whether there was sufficient evidence to support the involuntary termination of Jones' parental rights under Ind.Code § 31–35–2–4.

### *FACTS AND PROCEDURAL HISTORY*

On July 18, 1997, the Gibson County Division of Family and Children (DFC) was called to the home of Betty Greer

(Greer), the Children's mother. Jones is the adjudicated father of B.D.D., B.O.J. and K.M.G. At that time, B.D.D. was 35 months old, B.O.J. was 23 months old and K.M.G. was 8 months old. The DFC found the Children home alone and asleep on a couch that was soaked with urine. The apartment was cluttered and dirty and the only food that was found was eggs and old cottage cheese. As a result, the trial court granted emergency wardship of the Children to the DFC on July 18, 1997.

On July 21, 1997, a detention hearing was held and the trial court ordered B.D.D. and B.O.J. to be placed with Debra Fields (Fields), their paternal grandmother, and K.M.G. to be placed with Kenny Greer, her maternal grandfather. On September 9, 1997, the trial court found that the Children were children in need of services (CHINS).

On September 14, 1997, K.M.G. was removed from the home of Kenny Greer, at his request, and placed in the Conklin Foster Home. Later, in January 1998, Fields requested that B.O.J. be removed from her home. On March 5, 1998, the trial court, in response to the requests of the grandparents, ordered that all of the Children be placed in a licensed foster home. On March 6, 1998, the Children were all placed in the care of Mark and Joann Ferguson.

Throughout the time the DFC was caring for the Children, Jones failed to appear for hearings on the placement and care of his Children. On September 25, 1997, Jones failed to appear for a dispositional hearing wherein the trial court continued the wardship and out-of-home placement of the Children. In the trial court's March 5, 1998, entry, it noted that it could not locate the parents of the Children. Finally, on January 9, 1998, Jones failed to appear for a six-month review hearing in which the trial court continued the wardship.

On October 15, 1999, the trial court issued its order terminating the parent-child relationships between Jones and the Chil-dren. In the trial court's Findings of Fact and Conclusions of Law, it found: "The father Bryan Jones, having been given notice, has failed to appear for nearly all of the court review hearings scheduled." (R. 68). Jones appeals the trial court's order terminating the parent-child relationship.

## DISCUSSION AND DECISION

Jones alleges that there is insufficient evidence to support the involuntary termination of his parental rights under Ind. Code § 31–35–2–4(b)(2). Specifically, Jones alleges that the DFC failed to provide reasonable services to him. We find that sufficient evidence exists to support the trial court's decision to terminate the parent-child relationships.

In ordering the termination of the parental relationships between Jones and his Children, the trial court made specific findings. We will not set aside the specific findings unless they are shown to be clearly erroneous and we will affirm a general judgment on any legal theory supported by the evidence. *Matter of D.G.*, 702 N.E.2d 777, 780 (Ind.Ct.App.1998). "A finding is clearly erroneous when there are no facts or inferences drawn therefrom which support it." *Id.* In reviewing the termination proceedings, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Matter of A.N.J.*, 690 N.E.2d 716, 720 (Ind.Ct.App.1997). Therefore, we consider only the evidence that supports the trial court's decision and the reasonable inferences drawn therefrom. *Id.*

The involuntary termination of parental rights is an extreme measure that terminates all the rights of the parent to his or her child and is designed to be used only as a last resort when all other reasonable efforts have failed. *Id.* The Fourteenth Amendment to the United States Constitution provides parents with the right to establish a home and raise their children. *Matter of A.N.J.*, 690 N.E.2d at 720. However, the law allows for the ter-

mination of those rights when the parties are unable or unwilling to meet their responsibility as parents. *Id.* This policy balances the constitutional rights of the parents to the custody of their children with the State's limited authority to interfere with this right. *Id.* at 718. Because the ultimate purpose of the law is to protect the child, the parent-child relationship will give way when it is no longer in the child's interest to maintain this relationship. *Id.* at 720.

In order to terminate the parent-child relationship, the State must prove:

(b)(2)(A)... (i) the child has been removed from the parent for at least six (6) months under a dispositional decree; ...

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind.Code § 31–35–2–4. Further, the State must establish the elements of Ind.Code § 31–35–2–4 by clear and convincing evidence. Ind.Code § 31–34–12–2.

### Removal from Parent

Jones does not dispute that the State satisfied Ind.Code § 31–35–2–4(b)(2)(A). This section requires that, "The child has been removed from the parent for at least six (6) months under a dispositional decree." Ind.Code § 31–35–2–4(b)(2)(A). Removal under a dispositional decree refers to a dispositional decree that authorizes an out-of-home placement. *Tipton v. Marion County Dept. of Public Welfare,* 629 N.E.2d 1262, 1266 (Ind.Ct.App.1994). When a child is re-

moved from one parent and placed in foster care, the child is effectively removed from the custody of both parents. *Matter of K.H.* 688 N.E.2d 1303, 1305 (Ind.Ct.App. 1997).

In the present case, the DFC removed the Children from Greer's home on July 18, 1997. The DFC was granted emergency wardship of the Children and authorized to place the Children in foster care or other appropriate facilities in the trial court's July 18, 1997 order entry. Further, the Children remained placed outside of the home of the parents since the initial removal. The DFC filed its Petition for Termination of Parental Rights on January 26, 1999. Thus, the termination proceedings were not initiated until more than six months after the date the Children had been removed from the parent pursuant to Ind.Code § 31–35–2–4(b)(2)(A).

### *Sufficient evidence that the conditions that resulted in removal would not be remedied.*

Jones alleges that the DFC failed to provide information on services provided by the DFC and thus failed to give him the opportunity to remedy the conditions that resulted in the Children's removal. Jones argues that insufficient evidence exists to support the trial court's conclusion that the conditions that resulted in the Children being placed outside the home of the parent would not be remedied, because the DFC did not provide services to Jones that would assist him in correcting those conditions. We disagree.

In order to terminate the parent child relationship, the state must show by clear and convincing evidence that there is a reasonable probability that "the conditions that resulted in the child's removal or the reason for placement outside the home of the parents will not be remedied." Ind. Code § 31–35–2–4(b)(2)(B). The Children were in Greer's home at the time they were removed, therefore, the State in its

case against Jones, is required only to show that the reason the Children were not placed with Jones would not be remedied. To hold Jones liable for the conditions that resulted in the Children's removal would be to hold Jones liable for the actions of Greer.

■ In order to determine whether the conditions which led to the placement of the Children outside of the home of Jones are likely to be remedied, the trial court should first determine what conditions led to the DFC placing the Children with foster care rather than placing them with the father. *See In re A.A.C.*, 682 N.E.2d 542, 544 (Ind.Ct.App.1997). Second, the trial court should determine whether there is a reasonable probability that those conditions will be remedied. *Id.* (holding that when the child is not in the custody of the parent, the focus of the termination inquiry is what conditions led to the DFC retention of the custody of the child.)

■ When assessing the parent's fitness to care for children, the trial court should view the parent as of the time of the termination hearing and take into account any evidence of changed conditions. *Matter of A.N.J.*, 690 N.E.2d at 721. The trial court can reasonably consider the services offered by the DFC to the parent and the parent's response to those services. *Id.* However, the law concerning termination of parental rights does not require the DFC to offer services to the parent to correct the deficiencies in childcare, as Jones asserts. *Wardship of J.C. v. Allen County Office of Family and Children*, 646 N.E.2d 693, 695 (Ind.Ct.App. 1995). Rather, while a participation plan serves as a useful tool in assisting parents in meeting their obligations, and while county departments of public welfare routinely offer services to assist parents in regaining custody of their children, termination of parental rights may occur independently of them, as long as the elements of Ind.Code § 31–35–2–4 are proven by clear and convincing evidence. *Id.* Therefore, a parent may not sit idly by

without asserting a need or desire for services and then successfully argue that he was denied services to assist him with his parenting. *Jackson v. Madison County Dep't of Family and Children,* 690 N.E.2d 792, 793 (Ind.Ct.App.1998), *trans. denied.* In the present case, Jones sought no services from the DFC.

■ In addition, the trial court must consider the parent's habitual patterns of conduct as a means of determining the probability of future detrimental behavior. *Tipton,* 629 N.E.2d at 1266. A parent's failure to appear for assessments and court hearings reflects ambivalence, and the failure to attend parenting classes reflects an unwillingness to change existing conditions. *Id.* at 1269. Finally, when making its determination, the trial court need not wait until the child is irreversibly harmed so long as clear and convincing evidence exists that the shortfalls of the parent's ability are not likely to be remedied. *In re A.A.C.,* 682 N.E.2d at 544.

■ In the present case, the Children were removed from Greer's home because:

> the children were in the home of the mother by themselves after midnight; there was no food in the home except eggs and old cottage cheese; all three of the children were asleep on a couch which was soiled with urine; and clothing was scattered throughout the home to the extent that DFC was unable to determine clean clothes from soiled clothes when called to the scene. [footnotes omitted].

(R. 64)

Further, the Children were not placed with Jones because, as Jones testified:

> 'Cause when they first took the kids, they said that it wouldn't be good for me to have 'em [sic] because of something that happened between me and my ex-girlfriend ... They said that it wouldn't be—they said they couldn't do – they wouldn't like for me to have them because of something that happened be-

tween me and my ex-girlfriend ... She [ex-girlfriend] said that I hit my son. (R. 79–80). The condition which led to the DFC's retention of the Children after their removal from the mother's home was Jones' inability to provide the Children with a safe and healthy environment. Thus, the Children were removed from the home of Greer because she was not providing a safe and healthy environment for the Children, and the Children were not placed with Jones because he was similarly unable to provide for the needs of the Children. At trial, evidence was introduced that Jones had habitually failed to provide for the needs of the Children and that there was no reasonable likelihood that this would change.

On January 9, 1998, DFC reported to the trial court that Jones was living with his sister. In July of 1999, the DFC reported that Jones was living with Clarice Madison and her three children in a two-bedroom apartment. Finally, at the termination hearing, Jones testified that he was living in his mother's house with his mother, niece, two cousins and one of his children not the subject of this action. Two of the Children had previously been placed with Jones' mother and she requested that one of the Children be removed. Thus, during the time the Children were wards of the DFC, Jones made no provisions to house these Children and due to Jones' mother's previous request, the Children would not be placed in her house.[1]

In her July 9, 1998, report, the Court Appointed Special Advocate, Tamara Greene, stated that Jones "has not had any contact with [the] children as of this date." (R. 269). In the 12 month review filed by the DFC on July 9, 1998, Family Case Manager, Janet Schmitt (Schmitt), stated

that: "He [Jones] has not been involved in any of the services nor expressed an interest." (R. 261). In her January 8, 1999, and July 2, 1999, reports to the court, Schmitt stated that "Bryan has not sought out to participate in any family recommended services nor has he been an active part of the children [sic] lives during the time they have been in foster care."[2] (R. 166 and 194).

At trial, Laura Keys (Keys), of Regional Youth Services, testified that Jones did not request any visits with his Children during 1998. Further, she testified that Jones visited with the Children on February 1, 1999, and February 8, 1999, however he missed the next scheduled visit on February 15, 1999. Jones next saw the Children on June 7, 1999, when he showed up with Greer for a visit with the Children. Jones did not request any visits with the Children after June 7, 1999. Thus, the trial court's finding of fact that: "The father [Jones] has essentially failed to participate in the lives of these children," is supported by evidence. (R. 68).

■ At the time of the termination hearing, Jones was twenty-three years old and the father of six children; three of which are the subject of this appeal. Jones testified that he has cancer and has been drawing social security income due to his disability since he was fifteen. While, the fact that the father is of low or inconsistent income of itself does not show unfitness, if the poverty causes him to neglect the needs of his children or expose his children to danger, then the children's removal is warranted. *Tipton*, 629 N.E.2d at 1268. At trial, Jones testified that he does not support any of his Children, and has only worked for four months in the past two years. When Jones was asked if

---

1. While Jones testified at trial that he was going to get a house, the trial court is to assess the parent's fitness to care for the children as of the time of the termination hearing. *Matter of A.N.J.*, 690 N.E.2d at 721. Thus, Jones' future plans were not evidence on which the trial court could base its opinion.

2. In the six month report filed by Schmitt of the DFC, with regard to Jones, Schmitt noted, "His mother Debra Fields reports that he has been helpful with the children in that he occasionally watches them when she need [sic] to run errands." (R. 286).

he could state the full names and birth dates of the children involved in this action, he was able to provide all but one child's full name, but was unable to state any of the children's date of birth. The trial court properly noted that:

> Poverty can be a crushing burden ... However, poverty cannot excuse child neglect or abuse. Nor can it excuse the total lack of an attempt to remedy the situation to meet even the most minimal of standards of acceptable child care.

(R. 69). Sufficient evidence exists that Jones has neglected his children.

The trial court also found that: "The father Bryan Jones, having been given notice, has failed to appear for nearly all of the court review hearings scheduled." (R. 68). The trial court's finding of fact is supported by Jones' testimony at trial in response to questions by the State.

Q. According to court records, you were given notice of a hearing that was held September 25, of 1997, did you appear for that hearing?

A. Nope.

Q. According to what DFC's going to testify to, you were given notice for a hearing held January 9, 1998, did you attend that hearing?

A. Nope.

(R. 80).

Sufficient evidence exists to support the trial court's conclusion that there is a reasonable likelihood that the conditions which led to the Children being placed outside of Jones' home, will not be remedied. A trial court must consider a parent's habitual patterns of conduct. *Tipton*, 629 N.E.2d at 1269. Further, a trial court may consider a parent's failure to appear for court hearings to reflect ambivalence. *Id.* Jones has not provided housing or support for these Children, and

at the time of the termination hearing, Jones had not obtained facilities to house his Children. Throughout the time the Children, have been wards of the DFC, Jones has failed to appear for numerous hearings, has not sought any services from the DFC, and has visited the Children only three times. Sufficient evidence was provided at trial that there was a reasonable likelihood that Jones would not be able to provide for the basic needs of the Children and that these conditions would not be remedied.

### Best interest of the child.

In order to terminate the parent-child relationship, the trial court must also find that the termination of the parent-child relationship is in the best interest of the child.[3] Ind.Code § 31–35–2–4(b)(2)(C). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interest." *Matter of Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind.Ct.App.1992).

In the present case, the Children were removed from the home of Greer because she was unable to provide adequate housing and did not properly supervise the Children. Jones testified that he had not supported the children and that as of the date of the termination hearing, he had not obtained adequate housing for the Children.

At trial, the DFC Family Case Manager Schmitt testified that termination of Jones' parental rights is in the best interest of all three of Children. Further, Juanita Working (Working), Director of Social Services for Gibson County, testified that she

---

**3.** The best interests of the child is not relevant to the fitness of the parent to raise the child. *Tipton*, 629 N.E.2d at 1268. While the ability of the parent to raise the child is an objective measure of the parents ability to provide a safe environment and nurture the child, the child's best interest is a subjective measure of what would most benefit the child in these particular circumstances, and thus both must be established on the basis of individualized proof. *Id.*

believed adoption by a single family was in the best interest of the Children. Schmitt concurred with Working, stating, "we want to keep the kids together the whole time." (R. 118).

The Children were removed from Greer's home because she was unwilling or unable to provide adequate housing and supervision. Jones was not supporting the Children at the time of the termination hearing, and clear and convincing evidence was introduced that Jones was unable to provide for the needs of the Children. Jones' history of and present inability to provide for the needs of the Children, coupled with Working's and Schmitt's testimony that termination of the parent-child relationship is in the best interest of the Children, is sufficient to support the trial Court's conclusion that termination of the parent-child relationship is in the best interest of the Children.

*Plan for treatment of child.*

 Finally, in order for the trial court to terminate the parent-child relationship the trial court must find that there is a satisfactory plan for the care and treatment of the child. Ind.Code § 31-35-2-4(b)(2)(D). This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *J.K.C. v. Fountain County Dep't of Pub. Welfare*, 470 N.E.2d 88, 93 (Ind.Ct. App.1984).

Regarding the DFC's plan for the Children in the present case, Schmitt testified that if the parental rights of Jones are terminated: "The foster parents have expressed some interest. If that does not work out, the children's – the children have already been turned over to the special needs adoption team and their names have been placed there." (R. 118).

Thus, sufficient evidence exists supporting the trial court's conclusion that a satisfactory plan exists for the care and treatment of the Children.

*CONCLUSION*

Therefore, we conclude that there is sufficient evidence supporting the trial court's finding that the circumstances which resulted in the Children's removal from the home will not be remedied. Further, there is sufficient evidence supporting the trial court's finding that termination of the parent-child relationship is in the best interest of the Children, and that a satisfactory plan existed for the care and treatment of the Children. Accordingly, the trial court properly terminated the parent-child relationship between Jones and B.D.D., B.O.J. and K.M.G.

Affirmed.

KIRSCH, J., and BAKER, J., concur.