**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 30 2014, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIN L. BERGER**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**CHRISTINE REDELMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: )
)
)
A.W., (Minor Child), )
)
And )
)
J.W., (Mother) )
)
    Appellant-Respondent, )
)
      vs. )    No. 82A05-1311-JT-581
)
THE INDIANA DEPARTMENT OF CHILD SERVICES, )
)
    Appellee-Petitioner. )

**July 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

J.W. ("Mother") appeals the "Finding of Facts and Conclusions of Law" terminating her parental rights to her son, A.W. She contends the State failed to present sufficient evidence to support the termination, specifically arguing that the State "failed to prove [it] made reasonable efforts to provide family services or to preserve and reunify her family." Appellant's Brief at 4. Concluding the State is not required to present evidence regarding the provision of services and that it presented clear and convincing evidence of each element of the termination statute, we affirm.

## Facts and Procedural History

A.W. was born prematurely on January 6, 2012, and spent his first several months in the Neonatal Intensive Care Unit of the hospital. The Indiana Department of Child Services ("DCS") in Vanderburgh County became involved with the family "due to

statements [Mother] made while in the hospital after giving birth to the child and the concern for [Mother's] mental health." DCS Exhibit 2, page 3. Specifically, Mother was reportedly homeless while pregnant with A.W. and received no prenatal care. She was admitted to a mental health facility approximately one month before A.W. was born and remained hospitalized until his birth. While hospitalized, Mother made comments to staff about being evil and controlled by the devil, spoke in several voices, and asked "what if I hurt my baby?" DCS Exhibit 3, page 5. Moreover, Mother voluntarily readmitted herself to the mental health facility shortly after A.W.'s birth and was unable to make medical decisions for A.W. The juvenile court adjudicated A.W. a child in need of services ("CHINS") while he was still in the hospital, ordering that he be placed in foster care upon his release. A parental participation plan was entered in the CHINS case requiring Mother to remain drug- and alcohol-free, have a psychological evaluation, have supervised visitation with A.W., and participate in parenting classes and counseling, among other things. Accordingly, DCS offered referrals for in-home based services, participation in counseling sessions, participation in parenting classes, and arranged for supervised visits, but Mother failed to cooperate with any of the court-ordered services, failed to keep in contact with DCS representatives, and visited with A.W. only once, while he was still in the hospital. In addition, Mother was arrested several times during the pendency of this case and was incarcerated at the time of the termination hearing. DCS filed a petition for termination of Mother's parental rights in May of 2013.[1]

---

[1] A.W.'s father was unidentified, and the unknown father's parental rights were also terminated as part of this case.

3

Following a fact-finding hearing, the juvenile court entered an order terminating Mother's parental rights to A.W. on November 19, 2013.[2] Mother now appeals.

Discussion and Decision

I. Standard of Review

The Fourteenth Amendment to the United States Constitution protects the right of parents to establish a home and raise their children. In re J.S.O., 938 N.E.2d 271, 274 (Ind. Ct. App. 2010). The involuntary termination of parental rights is an extreme measure to be used only when all other reasonable efforts have failed. Id. The interests of the child trump the interest of the parent, though, when evaluating the circumstances surrounding termination of a parent-child relationship. In re J.H., 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), trans. denied.

When we review the termination of parental rights, we give deference to the trial court's unique position to assess the evidence. Id. Therefore, we consider only the evidence and reasonable inferences that are most favorable to the judgment. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009). When we review findings of fact and conclusions of law involving a termination of parental rights, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings and second, whether the

_____

[2] The proceedings in this case, including the fact-finding hearing, were presided over by the magistrate of the juvenile division of the court, as allowed by Indiana Code section 33-23-5-5(11) setting forth the powers of a magistrate. However, the appealed order was signed only by the magistrate, which is not allowed: "a magistrate shall report findings in an evidentiary hearing . . . to the court. The court shall enter the final order." Ind. Code § 33-23-5-9(a). We therefore held this appeal in abeyance and remanded the case to the trial court to review and issue a final appealable order. The trial court did so, approving the findings and recommendations of the magistrate. The trial court's final order also "notes that the court previously approved said findings, but that order was not filed with the appeal." Assuming that is the case, nothing in the record reflects that fact. There is no order showing a countersignature by the trial court, nor is there an entry in the chronological case summary ("CCS") reflecting the same. The CCS is the official record of the court and the court speaks through its docket. Gibson v. State, 910 N.E.2d 263, 267 (Ind. Ct. App. 2009); Ind. Trial Rule 77(B). The court should therefore endeavor to ensure that the CCS accurately reflects the judicial events in each case as we will not assume the appropriate process was followed based on a silent record.

4

findings support the judgment.  Id.  We will not reweigh the evidence or judge witness credibility and will set aside the trial court's judgment only if it is clearly erroneous.  Id.

The elements of involuntary termination of the parent-child relationship are codified in Indiana Code section 3l-35-2-4(b)(2).  The State must show:

> (A) that one (1) of the following is true:
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>> * * *
> (B) that one (1) of the following is true:
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>> * * *
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

The State must present clear and convincing evidence of each of those elements.  Ind. Code § 31-37-14-2.

## II.  Proof Supporting Termination

Mother argues that DCS failed to meet the requirements of the statute that termination be in the best interests of the child "because DCS failed to make reasonable efforts to provide family services or to preserve and reunify [Mother's] family." Appellant's Brief at 6.  Mother cites Indiana Code sections 31-34-21-5 and 31-34-21-5.5 in support of her argument.  Those statutes, however, are found in the CHINS provisions of the juvenile code.  In determining whether termination is appropriate, a juvenile court can consider the services offered by DCS and the parent's response to the services during the CHINS proceeding, but the law concerning termination does not require a specific showing regarding services.  In re B.D.J., 728 N.E.2d 195, 201 (Ind. Ct. App. 2000).

5

Services are routinely offered by DCS as part of a parental participation plan designed to assist parents in meeting their obligations, but termination of parental rights may occur independently of them as long as the elements of the termination statute are proven by clear and convincing evidence. Id.

Notwithstanding that the provision of family services is not an element of the termination statute, DCS did offer services to Mother and did make efforts to preserve and reunify the family. Mother wholly failed to avail herself of the services or to make any effort of her own to preserve her family. She visited with A.W. only once, shortly after his birth while he was still in the hospital. The DCS family case manager testified at the termination hearing about the issues that precipitated the CHINS proceedings and ultimately led to the filing of a petition seeking termination:

> Housing issues, unemployment, mental health issues that needed to be addressed that weren't being addressed. She was very uncooperative. I had a hard time getting ahold of her throughout the entire case. I made several attempts to track her down, engage her, and offered her services such as parent aide, visitation, and other Court ordered services that she didn't cooperate with.
> * * *
> She was very reluctant to participate in any services. Didn't feel like she needed mental health care. Never asked for visitation.

Transcript at 25-26, 31. Mother argues DCS did not make sure that Mother participated in the mental health services she was offered—especially while she was incarcerated—and contends that had it followed through, she could have recovered from her mental illness and learned to be an appropriate parent. Even assuming it is the responsibility of DCS rather than the parent to follow through on services, it is clear that Mother did not believe she needed services and there is no reason to believe she would have benefitted from being forced to participate in them.

6

Mother makes no other specific challenge to the juvenile court's findings or to the State's proof. Nonetheless, our review of the record shows the juvenile court's judgment terminating her parental rights was supported by the evidence presented by the State. Mother's testimony at the termination hearing amply demonstrates the mental health issues that concerned DCS and led to A.W.'s adjudication as a CHINS. Her answers to questions were often non-responsive or non-sensical. Given Mother's lack of participation in services designed to help her manage her mental health, learn parenting skills, and maintain a relationship with her child, the State showed a reasonable probability that the conditions that resulted in A.W.'s removal from her care will not be remedied. Further, Mother was incarcerated at the time of the termination hearing, did not know when she would be released, and had no plan for taking control of her life and providing A.W. a safe, stable environment if he were to be placed in her custody upon her release. The court-appointed special advocate testified:

> I don't believe she can care for [A.W.] with the extensive criminal history she has, the amount of time that she's been in and out of jail. Most times she's homeless, she has no financial support. She has no family support.

Tr. at 42. Both the family case manager and the court-appointed special advocate testified that they saw no possibility of Mother improving her parenting abilities and that it was in A.W.'s best interests for her parental rights to be terminated. Accordingly, the State provided clear and convincing evidence of each element required to support termination.[3]

## Conclusion

---

[3] A.W. had been removed from Mother under a dispositional decree for more than six months and the DCS plan for his future care and treatment was adoption by his foster family.

7

The judgment of the trial court involuntarily terminating Mother's parental rights to A.W. is affirmed.

Affirmed.

RILEY, J., and BRADFORD, J., concur.