# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 24 2015, 9:35 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Special Assistant to the State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of D.J., Minor Child, and his Father, M.W.,

M.W.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner,*

November 24, 2015

Court of Appeals Case No.
52A04-1506-JT-519

Appeal from the Miami Superior Court

The Honorable Daniel C. Banina, Judge

Lower Court Cause No.
52D02-1409-JT-6

**Vaidik, Chief Judge.**

# Case Summary

[1]   M.W. (Father) appeals the termination of his parental rights to his son, D.J. He challenges the sufficiency of the evidence underlying the court's termination order. However, Father, who has been incarcerated for a Class B felony since before D.J. was born, has never met or supported his son. In addition, Father has never held a job and has a legal history that includes multiple felonies and a probation violation. Father's earliest release date is in three years. While Father has been incarcerated, three-year-old D.J. is thriving with his foster family that plans to adopt him and his younger biological half-sister. Concluding there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm.

# Facts and Procedural History

[2]   D.J., the son of Father and J.J. (Mother), was born in October 2011. At the time of D.J.'s birth, Father was incarcerated in the Howard County jail on pending charges for conspiracy to commit attempted armed robbery as a Class B felony. In January 2012, the Miami County Department of Child Services (DCS) removed D.J. from Mother because of domestic violence between Mother and her boyfriend. D.J. was initially placed with his maternal grandparents. When they were no longer able to care for him, Father asked if his mother could do so. However, because she had health problems and her home was found to be unfit for a child, D.J. was placed with his current foster family in August 2012.

[3]     Father was convicted of the Class B felony in January 2013 and sentenced to fourteen years. Mother voluntarily consented to the termination of her parental rights in May 2013. In September 2014, DCS filed a petition to terminate Father's parental rights.

[4]     Testimony at the March 2015 hearing on the petition revealed that Father, who has six prior felony convictions for robbery and was on probation at the time he committed the Class B felony, has never held a job or supported D.J. The only contact he has had with his son is through letters, which Father stopped writing when he was asked to send them to DCS. Although Father testified that he is hoping to participate in prison programs that will shorten his sentence, Father testified that his earliest release date is February 2018.

[5]     At the hearing, Father asked if D.J. could remain with the foster family until he is released from prison. He explained that when he is released, he plans to live with his girlfriend, whom he met as a pen pal and who has a son almost Father's age. If that relationship does not last the three years until his release, Father plans to go to a shelter until he is able to find a job and housing.

[6]     D.J.'s DCS case manager testified that it is not in D.J.'s best interest to wait three years for Father's release. D.J. is thriving with his foster family, and his younger biological half-sister lives with them as well. DCS's plan is for the foster family to adopt both children.

[7]     In May 2015, the trial court issued an order terminating Father's parental rights. Father appeals.

# Discussion and Decision

[8] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when the parents are unwilling or unable to meet their parental responsibilities. *In re Bester,* 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[9] When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K.,* 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id* at 1229-1230.

[10] A petition to terminate parental rights must allege:

   (A) that one (1) of the following is true:

(i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[11] Here, Father argues that there is insufficient evidence to support the termination of his parental rights. Specifically, he contends that the evidence is insufficient that there is a reasonable probability that the conditions that resulted in D.J.'s removal or the reasons for placement outside the parent's home will not be remedied and that a continuation of the parent-child relationship poses a threat to D.J.'s well-being.

[12] At the outset we note that Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in D.J.'s removal or the reasons for his placement outside the parents' home will not be remedied.

[13] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements

against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* In so doing, trial courts have discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination, and courts may find that a parent's past behavior is the best predictor of his or her future behavior. *Id.* In addition, where a parent is not living with another parent at the time of the child's removal, the Court should determine what led DCS to place the child in foster care rather than with the other parent. *In re B.D.J.*, 728 N.E.2d 195, 200-201 (Ind. Ct. App. 2000). Last, a parent's testimony about future plans is not evidence upon which a trial court can base its termination decision. *Id.* at 202, n.1.

[14] Here, our review of the evidence reveals that Father, who has never met or supported D.J. and has never held a job, was incarcerated when his son was born and later when the child was removed from Mother's home. Father has an extensive criminal history that includes six felony convictions, and he was on probation at the time he committed the Class B felony. His earliest prison release date is in three years. In addition, three-year-old D.J. is thriving with a foster family that wants to adopt him and his younger biological half-sister. The trial court's conclusion that there was a reasonable probability that the conditions resulting in D.J.'s removal or the reasons for placement outside the home would not be remedied is not clearly erroneous.

[15] Affirmed.

Robb, J., and Pyle, J., concur.