## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2016, 8:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Gregory F. Zoeller
Attorney General

Robert J. Henke
Deputy Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of Parent-Child Relationship of L.D., | January 29, 2016 |
| | Court of Appeals Case No. 49A02-1506-JT-491 |
| D.B. (Father), *Appellant-Respondent,* | Appeal from the Marion Superior Court |
| v. | The Honorable Larry Bradley |
| Marion County Department of Child Services, and | Trial Court Cause No. 49D09-1410-JT-440 |

Child Advocates, Inc.,

*Appellees-Petitioners*

**Vaidik, Chief Judge.**

# Case Summary

D.B. (Father) appeals the termination of the parent-child relationship with his daughter, L.D., claiming that the Marion County Department of Child Services (DCS) failed to prove by clear and convincing evidence both that the continuation of the parent-child relationship poses a threat to L.D.'s well-being and that termination is in L.D.'s best interests. Concluding that DCS has proven these statutory requirements by clear and convincing evidence and that the trial court's judgment terminating Father's parental rights to L.D. is not clearly erroneous, we affirm.

# Facts and Procedural History

L.D. was born on October 29, 2004. In December 2012, DCS filed a petition alleging that L.D. and her three siblings were children in need of services because Mother had failed to provide them with a safe living environment free

from domestic violence.[1]  In addition, Mother lacked stable housing and had severe mental health issues that led her to attempt suicide in front of her children several times.  At the time the petition was filed, Father's location and ability to parent were unknown, and L.D. was placed in foster care.   At the January 2013 pre-trial hearing, DCS reported that it was "still searching for [Father]."  Exhibit Volume, p. 17.

[3]   L.D. was returned to Mother from August 2013 until October 2013, when she was removed again and placed back in foster care.  By that time, DCS family case manager Kriste Smith had located Father, who was living in Ohio.  Smith contacted Father to inform him about the case and asked him if he wanted her to initiate an interstate compact on placement to facilitate the placement of his daughter in Ohio.  Father asked Smith to wait until he "cleared up . . . a warrant for child support."  Tr. p. 132.  Smith also referred Father to a fatherhood-engagement program.  A facilitator from the program planned to travel from Indiana to Ohio to work with Father "on some parenting and also to work with him . . . to get the child support cleared up and make those recommendations for . . . reunification."  *Id.* at 134.   Father participated in an October 2013 hearing by telephone.  The trial court appointed counsel for Father and ordered him to appear for a November 2013 pre-trial hearing.  Although Father failed to appear at the November hearing, the trial court

---

[1] All four children have different fathers.  This appeal concerns only L.B. and her father, D.B.

authorized him to have "supervised parenting time [with L.D.] upon positive recommendations from service providers." Ex. Vol., p. 104.

[4] Following a December 2013 hearing at which Father failed to appear, the trial court adjudicated L.D. to be a child in need of services. The trial court ordered Father to successfully complete a father-engagement program and cooperate with the interstate-compact process. Lastly, the trial court awarded Father increased parenting time with L.D. pending positive recommendations from service providers. Father failed to attend a February 2014 review hearing, and in April 2014, L.D. was returned to Mother. At a May 2014 hearing, which Father failed to attend, DCS recommended that the case stay open for another 90 days at most.

[5] In June 2014, however, L.D. was taken from Mother's home in an emergency removal following a domestic-violence incident and placed in foster care. Following a September 3, 2014, permanency hearing, the trial court found that "no parent ha[d] demonstrated the ability and willingness to properly parent [L.D.]," and Father had not seen L.D. in two years. Appellant's App. p. 154. Following this order, Father had one two-hour supervised visit with L.D.

[6] In October 2014, DCS filed its petition to terminate the parental relationship between L.D. and her parents.[2] The trial court appointed counsel for Father, who failed to attend any of the pre-trial hearings. Father attended the first day

_____

[2] Mother voluntarily terminated her parental rights.

of the termination hearing, but refused to testify because he believed that the trial court did not have jurisdiction over either him or L.D. He did not attend the second day of the hearing, and did not answer his telephone when the trial court attempted to contact him for telephonic participation.

[7] Testimony at the hearing revealed that L.D. suffers from attention-deficit hyperactivity and post-traumatic stress disorders. She also lies and steals and is verbally aggressive and attention-seeking. Her behaviors have improved while she has been in foster care and she is thriving because of the consistency and stability of her foster family. DCS family case manager Kendra Akinjo explained that Father never demonstrated that he was able to handle L.D.'s therapeutic needs because he never completed a fatherhood-engagement program. Although he told case manager Smith that he had completed an engagement-type program in Ohio, that program was initiated before DCS' involvement and did not provide DCS with any recommendations. Further, case manager Akinjo explained that she did not know whether Father was a bad parent or had an unsafe place to live because Father failed "to make himself available for this case and available to his daughter." Tr. p. 228. The foster family's case manager and court-appointed special advocate both recommended the termination of the parent-child relationship between Father and L.D. The plan for L.D. is adoption by her foster parents, who also plan to adopt two of L.D.'s siblings.

[8] Following the hearing, the trial court issued an order terminating Father's parental rights. Specifically, the trial court concluded as follows:

There is a reasonable probability that the conditions that resulted in [L.D.'s] removal and continued placement outside the home will not be remedied by her father. [Father] has demonstrated he is either unable or unwilling to parent [L.D.] by his failure to complete the Father Engagement Program, cooperate with an ICPC or visit [L.D.] more than once since he came into the CHINS case in October of 2013. His unwillingness to complete the IDCSMC referrals may also be complicated by his insistence that there exists a lack of jurisdiction over his daughter and him. Due to his non-participation in referrals, his ability to parent remains unknown.

Appellant's App. p. 16. Father appeals the termination.

# Discussion and Decision

[9] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when the parents are unwilling or unable to meet their parental responsibilities. *In re Bester,* 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[10] When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K.,* 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a trial court has entered findings of fact and

conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[11] A petition to terminate parental rights must allege:

(A) that one (1) of the following is true:

    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

    (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for

placement outside the home of the parents will not be remedied.

> (ii)   There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[12]   Here, Father argues that there is insufficient evidence to support the termination of his parental rights. Specifically, he contends that there is insufficient evidence that there is a reasonable probability that the conditions that resulted in L.D.'s removal or the reasons for placement outside the parent's home will not be remedied and that a continuation of the parent-child relationship poses a threat to L.D.'s well-being. He also contends that there is insufficient evidence that termination of the parent-child relationship is in L.D.'s best interests.

## A. Conditions Remedied

[13]   At the outset we note that Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing

evidence only one of the three requirements of subsection (B).  We therefore discuss only whether there is a reasonable probability that the conditions that resulted in L.D.'s removal or the reasons for her placement outside the home will not be remedied.

[14]     In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis.  *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014).  We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied.  *Id.*  The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation.  *Id.*  In so doing, trial courts have discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination, and courts may find that a parent's past behavior is the best predictor of his or her future behavior.  *Id.*  In addition, where a parent is not living with another parent at the time of the child's removal, the Court should determine what led DCS to place the child in foster care rather than with the other parent.  *In re B.D.J.*, 728 N.E.2d 195, 200-201 (Ind. Ct. App. 2000).  Last, a parent's testimony about future plans is not evidence upon which a trial court can base its termination decision.  *Id.* at 202, n.1.

Here, our review of the evidence reveals that when L.D. was alleged to be a child in need of services in December 2012, Father's location was unknown. He was not located until almost a year later in October 2013 when L.D. was removed from her mother a second time. A DCS case worker offered to initiate an interstate compact on placement; however, Father told her to wait until he cleared up a child support warrant but never did so.[3] The case worker also referred Father to a fatherhood-engagement program, the completion of which would have helped Father reunite with L.D. Father did not complete the program. His only visit with L.D. in two years was two hours in September 2014. Father did not make himself available to the case manager or to his daughter. The trial court's conclusion that DCS has proven by clear and convincing evidence that there was a reasonable probability that the conditions resulting in L.D.'s removal or the reasons for placement outside the home would not be remedied is not clearly erroneous.

## B. Best Interests

Father also contends that there is insufficient evidence that termination of his parental rights was in L.D.'s best interests. In determining what is in a child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied.* In so doing,

---

[3] In *Matter of D.B.*, 49A02-1501-JV-48, (Ind. Ct. App. Sept. 2, 2015), *trans. denied*, this Court concluded that the interstate compact does not apply to out-of-state placement with a parent. We are not relying on Father's failure to complete the compact as a basis to support the termination. Rather, Father's failure to move forward in this area is indicative of his complacency and refusal to put forth any effort to reunite with L.D.

the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of service providers may support a finding that termination is in the child's best interests. *In re A.S.,* 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed.*

[17] Here, both the case manager and the CASA recommended the termination of Father's parental rights. In addition, the evidence presented showed that Father was unwilling to make himself available to the case manager and to his daughter, who is thriving with her foster family because of the consistency and stability that they provide. Father has only visited L.D. one time for two hours in the past two years. A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the child. *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012). Here, DCS has proven by clear and convincing evidence that terminating Father's parental relationship with L.D. is in the child's best interests.

[18] Affirmed.

Bailey, J., and Crone, J., concur.