# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 04 2016, 9:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Thoma
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of C.J. and W.J. (Minor Children), and

A.J. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

November 4, 2016

Court of Appeals Case No.
02A04-1604-JT-764

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause Nos.
02D08-1506-JT-77, -78

**Crone, Judge.**

## Case Summary

[1] A.J. ("Mother") appeals the trial court's order involuntarily terminating her parental relationship with her minor children, C.J. and W.J. (collectively "the Children"). We affirm.

## Facts and Procedural History

[2] Mother gave birth to C.J. in March 2005 and to W.J. in November 2006. Their father is deceased. In August 2013, Mother, her live-in boyfriend R.C., and her adult son got into an altercation outside the home where the Children were sleeping. Mother and son were arrested. Mother was intoxicated and tested positive for marijuana. R.C. later tested positive for marijuana and cocaine. The Indiana Department of Child Services ("DCS") alleged, and the trial court found, that the Children were children in need of services ("CHINS"). In December 2013, the trial court entered a dispositional decree placing the Children in Mother's care and ordering Mother to refrain from criminal activity, submit to random drug screens, undergo diagnostic assessments, participate in counseling and various services, and notify DCS of any housing or employment changes. The decree imposed similar requirements on R.C.

[3] Concerns regarding R.C.'s compliance with the decree were raised at a review hearing in March 2014. In April 2014, the trial court ordered Mother to ensure that the Children had no contact with R.C. In July 2014, Mother moved with the Children to R.C.'s home in Virginia without obtaining leave of court or

notifying DCS. In August 2014, the trial court adopted a permanency plan providing for termination of Mother's parental rights. In September 2014, the trial court held a detention hearing and issued a writ for the return of the Children to Indiana, where they were placed in foster care.

[4] In June 2015, DCS petitioned to terminate Mother's parental rights. A hearing was held over four days between October and December 2015. In March 2016 the trial court issued an order containing the following findings and conclusions:[1]

> 13. The Mother testified that while in Virginia she was hospitalized. She believes she was raped by three police officers. There is no evidence to substantiate her claim.
>
> 14. The Court found at a February 3, 2015 Review Hearing that the Mother was not in compliance with the terms of the Dispositional Decree. The children were continued in licensed foster care.
>
> 15. On July 14, 2015 the children were placed in the care of their adult half-sister, M.J., who is interested in adopting them. The children are doing well in her care.
>
> 16. Following their return to Indiana the children were placed in therapy with Park Center therapist Laura Swanson. Since July, 2015 their therapy has been home based.
>
> 17. The children each have special needs. W.J. is diagnosed with Attention Deficit Hyperactivity Disorder and has

---

[1] The order refers to the parties and others by name. We use the foregoing designations or initials where appropriate.

impulsivity issues. C.J. also had issues with self-control and has difficulty focusing on his school work. Both boys have a history of sexually acting out. From the testimony of their therapist, Laura Swanson, the Court finds that they need structure, medication management, and continuing individual and family therapy. They need a home that is free of drug and alcohol abuse. And they need to be under the supervision of a provider that can maintain their safety plan. The Court further finds from her testimony that M.J. has cooperated with her services and has followed the safety plan.

18. From the testimony of therapist Laura Swanson the Court finds that since being in therapy the children have done well.

19. Since August, 2015 the Mother has been afforded supervised visits with the children. From the testimony of visitation supervisor Luis Hernandez the Court finds that mother has an emotional bond with her sons. During the two hour visits the Mother demonstrates [an] interest in her children. However, the Mother has had to be given direction with regard to controlling their behaviors. She missed two (2) visits in in December 2015.

20. Notwithstanding the concerns with regard to the Mother's association with R.C. and the risks associated with his contact with the children, the Mother has continued to have contact with him.

21. The Mother was last regularly employed in 1999. She receives Social Security benefits owing to a disability based on a diagnosis of paranoia and schizophrenia. She works in various jobs for which she receives cash. She resides in her father's home.

22. From the testimony of Park Center's home based case worker, Lisa Buttram, and from the Mother's admissions, this Court finds that the mother has not completed home based therapy or services. The services referred in April 2015 were

closed with a "no progress" designation.

23.  From the testimony of Maralee Martin, a group facilitator and coordinator for the Center for Nonviolence, this Court finds that the Mother has not completed her group therapy having been twice expelled for excessive absenteeism.

24.  The Mother admits that she has not completed the Center For Nonviolence group, she did not complete home based services, through any of the referred agencies and did not complete drug and alcohol counseling services.

25.  The mother has completed seventy (70) drug screens over the course of the underlying CHINS case.  Of those sixteen (16) were positive for marijuana (THC) or synthetic cannaboids [sic].   Her recent screens (between April 1, 2015 and July, 2015) were positive for the illegal substances.

26.  The Mother was referred for therapeutic services at Park Center.  From the testimony of therapist Courtney Dressler, this Court finds that the mother did not complete the services and last participated in July 2015.

27.  In the present underlying CHINS case, the children have been placed outside the care of the mother for a period of more than six (6) months since the entry of the Disposition Decree.

28.  Should parental rights be terminated [DCS] has an appropriate plan, that being adoption by their adult half-sister.

29.  The [Children's] Guardian ad Litem has also concluded that the children's best interests are served by the termination of parental rights.  In support of her conclusion she cites the Mother's lack of stability and her continued contact with R.C. despite the terms of a satiety [sic] plan.

**BASED ON THE ABOVE FINDINGS OF FACT THE**

**COURT APPLIES THE RELEVANT STATUTORY LAW AND CONCLUDES THAT:**

1. …. In the present case the [Children have] been placed outside the care of [Mother] under a Dispositional Decree for more than six (6) months prior to the filing of the petition to terminate parental rights.

2. …. By the clear and convincing evidence the court determines that there is a reasonable probability that reasons that brought about the [Children's] placement outside the home will not be remedied. The Mother has not completed any of her services. Despite a safety plan and an order restricting R.C.'s contact with her sons, she moved to Virginia to be with him. Her relocation to Virginia during the pendency of the underlying CHINS case was without the knowledge of or the sanction of [DCS] or the court. While in Virginia she was hospitalized and believes that she was raped by three police officers. She has not abstained from the use of illegal substances and … has not successfully completed drug and alcohol treatment. She has not completed home based services designed to help her with housing and other community services. She has not completed therapy.

3. …. In this case the Guardian ad Litem has concluded that termination of parental rights is in the [Children's] best interests. The children need a safe … and stable environment. They need constant supervision to control their impulses and to guard against their sexualized behaviors. They require tutorial assistance and therapy. The Mother has not completed any of her services and has not demonstrated an ability to properly direct the children during visitations. The Mother has not demonstrated an ability or willingness to regularly participate in services and therapies designed for her benefit. The Court cannot therefore conclude from her conduct that she would be able or willing to provide the on-going therapeutic services and tutorial assistance that the children require for their well-being. Through the termination of parental rights the children may be adopted by

a relative that has demonstrated an ability to meet their needs. The best interests of the children are served by termination of parental rights.

4. [DCS] has thus proven by clear and convincing evidence that the allegations of the petitions are true and that the parent-child relationships should be terminated.

Appealed Order at 3-5. Mother now appeals.

# Discussion and Decision

The purpose of terminating parental rights is not to punish parents, but to protect their children. *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008). "[A]lthough parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *Id.* "[T]ermination is intended as a last resort, available only when all other reasonable efforts have failed." *Id.* The trial court need not wait until the children are irreversibly harmed before terminating the parent-child relationship. *In re A.G.*, 45 N.E.3d 471, 479 (Ind. Ct. App. 2015), *trans. denied* (2016).

A petition for the involuntary termination of parental rights must allege in pertinent part:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

....

      (B) that one (1) of the following is true:

            (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

            (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.[2]

            (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

      (C) that termination is in the best interests of the child; and

      (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2.

      Clear and convincing evidence as a standard of proof requires the existence of a fact to be highly probable. It need not reveal that

---

[2] Because DCS must prove that only one of these three things is true, and because the trial court made no findings on the issue, we do not address Mother's argument that the continuation of the parent-child relationship does not pose a threat to the Children's well-being.

the continued custody of the parent is wholly inadequate for the children's very survival. Rather, it is sufficient to show that the children's emotional and physical development are threatened by the parent's custody.

*In re D.W.*, 969 N.E.2d 89, 94 (Ind. Ct. App. 2012) (alteration, citations, and quotation marks omitted). If the trial court finds that the allegations in the petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[7] This Court has long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92-93 (Ind. Ct. App. 2014) (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

Mother contends that the trial court's findings do not support its conclusions regarding Indiana Code Section 31-35-2-4(b)(2)(B), -(C), and -(D). We address each conclusion in turn.

## Section 1 – The trial court did not clearly err in concluding that there is a reasonable probability that the conditions that resulted in the Children's removal will not be remedied.

Mother asserts that the trial court erred in concluding that there is a reasonable probability that the conditions that resulted in the Children's removal will not be remedied. "[I]t is not just the basis for the initial removal of the child that may be considered for purposes of determining whether a parent's rights should be terminated, but also those bases resulting in the continued placement outside of the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. Here, the Children were removed from Mother after she moved them out of state into her boyfriend's home in violation of the trial court's no-contact order. The Children remained in foster care due to Mother's failure to deal with her substance abuse issues and complete counseling, therapy, and other court-ordered services.

"[T]he trial court must consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation. At the same time, however, a trial court should judge a parent's fitness to care for his child as of the time of the termination proceeding, taking into consideration evidence of changed conditions." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 152 (Ind. 2005) (citation omitted). "When

making its determination, the trial court can reasonably consider the services offered to the parent and the parent's response to those services." *In re Involuntary Termination of Parent-Child Relationship of S.M.*, 840 N.E.2d 865, 869 (Ind. Ct. App. 2006). A parent's future plans are not evidence of her current fitness to care for her children. *In re B.D.J.*, 728 N.E.2d 195, 202 n.1 (Ind. Ct. App. 2000). It is within the trial court's discretion to disregard a parent's remedial efforts made shortly before the termination hearing. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[11] Specifically, Mother asserts that she had been drug-free for three months at the time of the termination hearing, and she notes that therapist Dressler testified that a three-month abstention is "considered partial remission[.]" Tr. at 102. Mother's assertion is an invitation to reweigh evidence, which we must decline. DCS points to lab results indicating that Mother had synthetic cannabinoids in her system on one of the October 2015 termination hearing dates. DCS Ex. 80. And visitation supervisor Hernandez testified that Mother appeared to be under the influence during a visit later that month. Tr. at 265. Clearly, Mother's substance abuse issues persisted at the time of the termination hearing, and her failure to complete drug and alcohol treatment makes it reasonably probable that those issues will not be remedied.

[12] Mother notes that DCS was also concerned about her paranoia and schizophrenia. She states that she "was not taking any medication to control those issues because she did not have insurance[,]" which was "pending through Medicaid[,]" and that she "testified that she was not unwilling to take

medication." Appellant's Br. at 18. The trial court was not required to credit this self-serving testimony about her future intentions, especially given Mother's lack of follow-through regarding numerous court-ordered services.[3] The trial court did not clearly err in concluding that there is a reasonable probability that the reasons for the Children's removal will not be remedied.[4]

## Section 2 – The trial court did not clearly err in concluding that termination is in the Children's best interests.

[13] Mother also contends that the trial court erred in concluding that termination is in the Children's best interests. A determination of a child's best interests should be based on the totality of the circumstances. *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012). In making this determination, the trial court must subordinate the parent's interests to those of the children involved. *Id.* A parent's historical inability to provide a suitable environment along with her current inability to do the same supports a finding that termination of parental rights is in the children's best interests. *Id.* "[A] child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in

---

[3] Mother testified that she has "learn[ed] to control" the symptoms of her mental illness by "breath[ing] a lot" and "try[ing] to keep busy." Tr. at 13.

[4] Mother also addresses DCS's supposed concern regarding the Children's "lack of educational development." Appellant's Br. at 18. Because this was not one of the reasons for the Children's removal, we need not respond to this argument.

the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*.

[14] Mother argues that termination of the parent-child relationship is not in the Children's best interests because she is willing and able to provide for them. Even if Mother is willing to provide a suitable environment for her Children, the testimony of the service providers coupled with the evidence supporting the trial court's numerous unchallenged findings clearly and convincingly establishes that she has not been and will not be able to do so. We will not reweigh that evidence. The trial court did not clearly err in concluding that termination is in the Children's best interests.

## Section 3 – The trial court did not clearly err in concluding that there is a satisfactory plan for the Children's care and treatment.

[15] Finally, Mother argues that the trial court erred in concluding that there is a satisfactory plan for the Children's care and treatment, namely adoption by their adult half-sister M.J. This argument is premised solely on the testimony of Mother's older sister that M.J. and her family are "partiers." Tr. at 304. The trial court was not obligated to credit this testimony, and neither are we. Again, we find no error here. The trial court's order terminating Mother's parental rights is affirmed.

[16] Affirmed.

Kirsch, J., and May, J., concur.