# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 27 2017, 10:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Marjorie Newell
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of N.S.,

A.S.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

April 27, 2017

Court of Appeals Case No.
71A03-1611-JT-2568

Appeal from the St. Joseph Probate Court

The Honorable James N. Fox, Judge

The Honorable Graham C. Polando, Magistrate

Trial Court Cause No.
71J01-1508-JT-77

**Najam, Judge.**

## Statement of the Case

A.S. ("Mother") appeals the trial court's termination of her parental rights over her minor child, N.S. ("the Child").[1] Mother raises a single issue for our review, which we restate as the following three issues:

1. Whether the trial court's conclusion that the conditions that resulted in the Child's removal from Mother's care will not be remedied is clearly erroneous.

2. Whether the trial court's conclusion that the termination of the parent-child relationship is in the Child's best interests is clearly erroneous.

3. Whether the trial court's conclusion that the Indiana Department of Child Services ("DCS") has a satisfactory plan for the care and treatment of the Child is clearly erroneous.

We affirm.

## Facts and Procedural History[2]

Mother gave birth to the Child on May 5, 2014. The Child's meconium tested positive for marijuana and benzodiazepine, and Mother tested positive for

---

[1] The trial court's judgment also terminated, through default judgment, the parental rights of the Child's unknown father.

[2] The Statement of Facts in Mother's brief on appeal is not in accordance with our standard of review. *See* Ind. Appellate Rule 46(A)(6)(b).

marijuana and amphetamine. Hospital staff present at the Child's birth were also concerned with Mother's parenting skills after she was unable to implement the staff's instructions regarding properly feeding the Child.

[4] DCS removed the Child from Mother's care and requested the trial court adjudicate the Child a Child in Need of Services ("CHINS"). Mother admitted that the Child was a CHINS, and the trial court entered its dispositional order accordingly. Among other things, that order instructed Mother to refrain from illegal drug use, submit to random drug screens, successfully complete parenting classes, and complete a psychological evaluation along with any recommendations that resulted from that evaluation.

[5] In August of 2015, DCS filed its petition to terminate Mother's parental rights. The court held a fact-finding hearing on DCS's petition in August and September of 2016. At that hearing, DCS presented evidence that demonstrated that Mother had failed numerous drug screens following the CHINS dispositional order. DCS also demonstrated that Mother had not appeared for several other drug screens. Mother denied that she had continued to use drugs and blamed the positive results on her associations with others who were using.

[6] Dr. Anthony Berardi, Mother's psychologist, testified that Mother is in the "borderline level of intellect functioning," and, following his initial evaluation of her, he concluded that Mother would "misperceive" developmentally appropriate behavior from the Child "and think the [C]hild is behaving in an

inappropriate way and[,] therefore, respond to it inappropriately." Tr. at 12, 15. He also stated that Mother's "level of empathy is extremely low," which prevented her from providing the Child with appropriate emotional support. *Id.* at 15-16. He further testified that Mother demonstrated a "high risk" that she would "need to have power over the [C]hild, to have control over the [C]hild." *Id.* at 16. In light of his assessment, Dr. Berardi concluded that Mother needed to demonstrate progress in supervised visits and parenting classes before he could support reunification.

[7] However, Mother's parenting-service providers testified that Mother had not made progress with them. For example, Mary Rose, the Executive Director of the Families First Center, testified that Mother demonstrated "dangerous and volatile" behavior around the Child; that Mother "didn't always fully supervise" the Child; that Mother "was struggling to take care of herself and meet her own needs"; and that Mother "had a very difficult time grasping basic child development and treating [the Child] in the age[-]appropriate manner." *Id.* at 78. Director Rose further testified that supervised visitation eventually had to be stopped because Mother continued to exhibit "dangerous behaviors," such as "[y]elling, name calling, bumping into [a case worker] on the stairs, [and] making racist comments." *Id.*

[8] Similarly, Elisabeth Jackson, the court-appointed special advocate ("CASA"), testified that Mother had "stopped doing therapy" even though Mother "would have benefitted from parenting classes on topics such as safety tips and feeding and . . . repetitive practicing of parenting skills." *Id.* at 91. The CASA opined

that the termination of Mother's parental rights over the Child was in the Child's best interests in light of Mother being "non-compliant with a majority" of the services required of her; "child safety"; "aggressive events . . . right in front of her child"; and continued "drug use." *Id.* at 91-92. The CASA further agreed with DCS's plan for the Child's adoption, and she stated that she had met with the Child's preadoptive family and she was "in support of [the] plan" to place the Child with them. *Id.* at 92. Likewise, Janella Hutchison, one of Mother's family case managers ("FCM") with DCS, testified that termination of the parent-child relationship was in the Child's best interests and that the Child's preadoptive home was "[a]bsolutely" satisfactory. *Id.* at 54-55.

[9] In October of 2016, the court entered its order terminating Mother's parental rights. In relevant part, the court found and concluded that the reasons that resulted in the Child's removal would not be remedied and that continuation of the parent-child relationship posed a threat to the Child. The court also found and concluded that termination of Mother's parental rights was in the Child's best interests and that DCS had a satisfactory plan for the Child's placement. This appeal ensued.

# Discussion and Decision

## *Overview*

[10] Mother appeals the trial court's termination of her parental rights over the Child. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is

protected by the Fourteenth Amendment of the United States Constitution."
*Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind.
Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the
interests of the parents to those of the child when evaluating the circumstances
surrounding a termination. *Schultz v. Porter Cty. Ofc. of Family & Children (In re
K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child
relationship is proper where a child's emotional and physical development is
threatened. *Id.* Although the right to raise one's own child should not be
terminated solely because there is a better home available for the child, parental
rights may be terminated when a parent is unable or unwilling to meet his or
her parental responsibilities. *Id.* at 836.

[11] Before an involuntary termination of parental rights can occur in Indiana, DCS
is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions
>> that resulted in the child's removal or the reasons for
>> placement outside the home of the parents will not be
>> remedied.
>>
>> (ii) There is a reasonable probability that the continuation
>> of the parent-child relationship poses a threat to the well-
>> being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been
>> adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2016). DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. *Id.* DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[12] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Ofc. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Ofc. of Family & Children (In re L.S.),* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). *trans. denied*.

[13] Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Ofc. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and,

second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[14] Mother asserts that the trial court clearly erred when it concluded that the termination of her parental rights over the Child is appropriate under subsections (B), (C), and (D) of Indiana Code Section 31-35-2-4(b)(2). We address each of Mother's arguments in turn.

### Issue One: Subsection (B)—The Conditions that Resulted in the Child's Removal will not be Remedied

[15] We first address Mother's argument on appeal that the trial court erred when it concluded that the conditions that resulted in the Child's removal from Mother's care will not be remedied.[3] In determining whether the evidence supports the trial court's finding that Mother was unlikely to remedy the reasons for removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must

---

[3] Given our disposition on this issue, we need not consider Mother's additional arguments under the alternative provisions of Indiana Code Section 31-35-2-4(b)(2)(B).

judge a parent's fitness to care for his or her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[16] We cannot say that the trial court clearly erred when it concluded that the conditions that resulted in the Child's removal from Mother's care will not be remedied. There is no question that the Child was removed from Mother's care due to Mother's drug use and inability to care for the Child. Yet, despite the coercive intervention of the trial court in the CHINS proceedings, Mother has not remedied those conditions. Mother failed or refused to appear for numerous drug screens between the dispositional hearing in the CHINS matter and the ensuing termination hearing. And Mother was unable or unwilling to apply the parenting skills her various service providers had attempted to teach her. She showed difficulty "grasping basic child development" and "treating [the Child] in the age[-]appropriate manner." Tr. at 78. Several service

providers testified that Mother had failed to make substantial progress in her services.

[17] Mother asserts on appeal that her parental rights are being terminated solely on the basis of her mental disability. We disagree. Mother's inability or unwillingness to care for the Child appropriately is the basis for the trial court's judgment, and that is a sound basis notwithstanding Mother's mental disability. *E.g.*, *R.G. v. Marion Cty. Ofc. of Family & Children*, 647 N.E.2d 326, 330 (Ind. Ct. App. 1995), *trans. denied*. Moreover, DCS demonstrated in the trial court that Mother had refused to acknowledge her failures. Instead, she asserted that her failed drug screens were the fault of others with whom she had associated, and she asserted that she did not need services because she already knew what she needed to know to be a parent. The trial court was free to take those assertions into account in assessing the weight and credibility of the parties' arguments, and Mother's arguments on appeal simply seek to have this court disregard the evidence most favorable to the trial court's judgment and instead reweigh the evidence in her favor. We will not do so. We cannot say that the trial court's conclusion that the conditions that resulted in the Child's removal will not be remedied is clearly erroneous.

### Issue Two: Subsection (C)—The Best Interests of the Child

[18] Mother next asserts that the trial court erred when it concluded that the termination of her parental rights was in the Child's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v.*

*Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Ofc. of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224.

[19] Here, in addition to the evidence described above with respect to subsection (B), several care providers, including the CASA and an FCM, testified that the termination of Mother's parental rights was in the Child's best interests. Mother's arguments on appeal again simply seek to have this court disregard the evidence most favorable to the trial court's judgment and reweigh the evidence on appeal, which we will not do. We cannot say that the trial court's conclusion that the termination of Mother's parental rights was in the Child's best interests is clearly erroneous.

### Issue Three:  Subsection (D)—DCS' Permanency Plan

[20] Finally, Mother challenges the trial court's conclusion that DCS has a satisfactory plan for the care and treatment of the Child.[4]  In order for the trial

---

[4]  We note that Mother does not support this argument with citation to authority.  *See* App. R. 46(A)(8)(a).

court to terminate the parent-child relationship, the court must find that there is a satisfactory plan for the care and treatment of the child. I.C. § 31-35-2-4(b)(2)(D). "This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *Jones v. Gibson Cty. Div. of Family & Children (In re B.D.J.)*, 728 N.E.2d 195, 204 (Ind. Ct. App. 2000).

[21] For example, we have affirmed the trial court's judgment that a satisfactory plan exists in the following circumstances:

> Here, D.D. was residing in a foster home, and the foster parents were interested in adoption but were not ready to make a final decision. The [local office for family and children's] plan was for D.D. to be adopted, either by the current foster family or another family. The [local office] offered a plan that gave a general sense of direction for D.D.'s care and treatment.

*In re D.D.*, 804 N.E.2d at 268.

[22] We cannot say that the trial court's conclusion that DCS's plan of adoption for the Child is satisfactory is clearly erroneous. The Child has been placed with a preadoptive family. The CASA testified that she had met with the Child's preadoptive family and she was "in support of [the] plan" to place the Child with them. Tr. at 92. Similarly, FCM Hutchison testified that the Child's preadoptive home was "[a]bsolutely" satisfactory. *Id.* at 54-55. Thus, DCS presented evidence that demonstrated at least a general sense of the direction in which the Child will be going after the parent-child relationship is terminated. As such, we cannot say that the trial court erred when in concluded, based on

that evidence, that DCS has a satisfactory plan for the care and treatment of the Child.

### *Conclusion*

[23] In sum, we affirm the trial court's termination of Mother's parental rights.

[24] Affirmed.

Riley, J., and Bradford, J., concur.