## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 16 2018, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: The Termination of the Parent/Child Relationship of Mak.B and Mar.B; | March 16, 2018 |
| | Court of Appeals Case No. 20A04-1709-JT-2154 |
| D.C. (Mother), *Appellant-Defendant,* | Appeal from the Elkhart Circuit Court |
| v. | The Honorable Michael A. Christofeno, Judge |
| Indiana Department of Child Services, *Appellee-Plaintiff.* | The Honorable Deborah A. Domine, Magistrate |
| | Trial Court Cause Nos. 20C01-1701-JT-1 20C01-1701-JT-2 |

**Pyle, Judge.**

# Statement of the Case

D.C. ("Mother") appeals the termination of the parent-child relationship with her children, Mak.B. ("Mak.B.") and Mar.B. ("Mar.B.") (collectively "the children"), claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied; (2) a continuation of the parent-child relationship poses a threat to the children's well-being; and (3) termination of the parent-child relationship is in the children's best interests. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.[1]

We affirm.

# Issue

Whether there is sufficient evidence to support the involuntary termination of Mother's parental rights.

# Facts

Mother is the parent of two daughters, Mak.B., who was born in January 2010, and Mar.B., who was born in January 2011. In August 2015, Mother and her

---

[1] The children's father voluntarily relinquished his parental rights and is not a party to this appeal.

boyfriend became involved in a physical altercation as they were driving. The children were in the back seat. A police officer who happened to be driving behind their car saw the fight and was getting ready to pull them over when their car crashed into another vehicle. The officer approached the car and noticed methamphetamine pipes within the children's reach as well as coffee filters with methamphetamine residue and oxycodone pills. Mother was arrested for domestic battery in the presence of a child, and the children were placed in foster care.

[4] The children were adjudicated to be CHINS in September 2015, and Mother was court-ordered to: (1) complete a domestic violence assessment and follow all recommendations; (2) attend supervised visits with the children; (3) complete a drug and alcohol assessment and follow all recommendations; (4) remain drug fee and submit random urine drug screens; (5) complete a psychological assessment; and (6) obtain and maintain stable employment and housing. DCS also offered Mother home-based case management services, individual therapy, and a medication evaluation.

[5] When Mother failed to comply with the court's orders, DCS filed a petition to terminate her parental rights in January 2017. Testimony at the May 2017 termination hearing revealed that Mother had completed a domestic violence assessment but had failed to follow recommendations. Mother had also completed a drug and alcohol assessment and intensive outpatient program but had failed to complete the aftercare program. Her visits with her children had been inconsistent, and she had attended only twenty of fifty-five scheduled

visits. She had failed more than half of her urine drug screens and was arrested for the possession and use of drugs. She had been twice incarcerated in 2016. During the pendency of the CHINS proceedings, Mother had given birth in February 2016 to a son that had multiple drugs, including methamphetamine, in his system. At the time of the hearing Mother was pregnant with her fourth child. She had been "on the run" avoiding arrest from October 2016 until January 2017 when she turned herself in and was incarcerated. (Tr. 134). Mother had never obtained stable housing or employment.

[6] When asked whether the conditions that had resulted in the children's removal had been remedied, DCS Family Case Manager Laura Stapleton ("Case Manager Stapleton") responded:

> No. . . . Because it's been the history that [Mother] is incarcerated, then she gets out, and she does well for a month or two. And then she tests positive again and she breaks probation and then she's on the run, and the - - it's just been up and down with the kids, and I don't foresee that stopping.

(Tr. 134). Case Manager Stapleton further explained that the children, who were then six and seven years old, were in foster care with relatives that planned to adopt them and that the children had "made it clear that they [did not] want to see [Mother] again. They're happy where they're at; they call the foster parents Mom and Dad . . . ." (Tr. 138). According to Case Manager Stapleton, termination was in the children's best interests.

[7] The children's therapist, Kami Brenneman, testified that the children were "extremely happy" and were "in a very stable situation." (Tr. 183). CASA Jean Rupp ("CASA Rupp") testified that the children were "doing absolutely fantastic." (Tr. 194). They were extremely happy and excelling in school. According to CASA Rupp, termination was in the children's best interests because "they deserve the life that they have right now, and I can see great things for these children in . . . the future. I think if this adoption were to fall through, it would put these kids over the edge." (Tr. 197).

[8] At the end of the hearing, the trial court noted that the children had "been in limbo waiting for about a third of their lives . . . ." (Tr. 217). Two days after the hearing, the trial court issued a detailed order terminating Mother's parental rights. Mother now appeals the termination.

# Decision

[9] Mother argues that there is insufficient evidence to support the termination of her parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[10]     When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[11]     A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1231.

[12] Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied; and (2) a continuation of the parent-child relationship poses a threat to the children's well-being.

[13] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside Mother's home will not be remedied.

[14] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration

evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013). The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of her future behavior. *E.M.*, 4 N.E.3d at 643.

[15] Here, the children were removed from Mother's home because of domestic violence and Mother's drug use. Our review of the evidence reveals that at the time of the termination hearing, Mother had not followed the recommendations of either the domestic violence or drug and alcohol assessments. Rather, during the pendency of the CHINS proceeding, Mother had continued to use drugs, including methamphetamine, and had been incarcerated more than once. She had also given birth to a third child that had drugs in his system. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in the children's removal would not be remedied. We find no error.

[16] Mother also argues that there is insufficient evidence that the termination was in the children's best interests. In determining whether termination of parental

rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. "'A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interest.'" *In re B.D.J.*, 728 N.E.2d 195, 203 (Ind. Ct. App. 2000) (quoting *Matter of Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind. Ct. App. 1992), *trans. denied, superseded by rule on other grounds*). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[17] Here, our review of the evidence reveals that Mother has historically been unable to provide stability and supervision for her children and was unable to provide the same at the time of the termination hearing. In addition, Case Manager Stapleton and CASA Rupp testified that termination was in the children's best interests. The testimony of these service providers, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in the children's best interests. There is sufficient evidence to support the terminations.

[18]    Affirmed.

Kirsch, J., and Bailey, J., concur.