## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2019, 7:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel G. Foote
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of E.O. (Minor Child); <br><br> T.G. (Mother), <br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br> *Appellee-Petitioner,* <br><br> and <br><br> Child Advocates, Inc., | June 12, 2019 <br><br> Court of Appeals Case No. 18A-JT-2864 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn Moores, Judge <br><br> The Honorable Scott Stowers, Magistrate <br><br> Trial Court Cause No. 49D09-1804-JT-465 |

*Appellee-Guardian Ad Litem*

**Pyle, Judge.**

# Statement of the Case

T.G. ("Mother") appeals the termination of the parent-child relationship with her son, E.O., ("E.O."), claiming that: (1) the trial court abused its discretion when it denied her motion for a continuance; and (2) there is insufficient evidence to support the termination. Finding no abuse of the trial court's discretion and sufficient evidence to support the termination, we affirm the trial court's judgment.[1]

We affirm.

# Issue

1. Whether the trial court abused its discretion when it denied Mother's motion for a continuance.

2. Whether there is sufficient evidence to support the termination of the parent-child relationship.

---

[1] The trial court also terminated D.O.'s ("Father") parental relationship with E.O. Father is not a party to this appeal.

## Facts

[3] The evidence and reasonable inferences that support the judgment reveal that E.O. was born in March 2017.  Less than a week later, DCS filed a petition alleging that E.O. was a Child in Need of Services ("CHINS").  The petition alleged that Mother had "displayed paranoid and combative behavior at the hospital shortly after [E.O.] was born."  Exhibits at 43.  The petition further alleged that Mother had been diagnosed with a paranoid personality disorder and had not received treatment for the disorder.  She also had an extensive history with DCS, including an open CHINS case with E.O.'s one-year-old biological sibling where she had failed to engage in any services to address her mental health issues.  The petition further alleged that Mother's mental health issues hindered her ability to appropriately care for E.O.

[4] E.O. was removed from Mother and placed in foster care with his sibling.  In July 2017, Mother admitted that E.O. was a CHINS.  Following a dispositional hearing, the trial court ordered Mother to continue her mental health treatment at Eskenazi and to sign any necessary releases of information.

[5] In April 2018, DCS filed a petition to terminate Mother's parental rights.  At the beginning of the termination hearing, Mother's counsel asked the trial court to continue the hearing because Mother was not present.  Counsel did not know where Mother was and why she was not present.  Mother was not incarcerated.  The State objected to the motion.  Specifically, the State explained that it had provided notice of the hearing to Mother, the case was a year old, and the State's witnesses were present and ready to testify.  The trial court denied

Mother's motion for a continuance. Also at the beginning of the hearing, the parties discussed the possibility that the hearing might take two days.

[6] Testimony at the hearing revealed that Mother suffered from a paranoid personality disorder and "presented with a significant amount of paranoia and delusions . . . specific to DCS." (Tr. at 45). Specifically, Mother had written letters to then-President Obama and then-Governor Pence about her case. Mother did not complete mental health services at Eskenazi and refused to sign releases of information because she insisted that she did not need mental health treatment. A social worker at Midtown Mental Health Center also assessed Mother, but Mother's case was closed within three months because of her numerous cancellations and no-shows.

[7] DCS Family Case Manager Alicia Walker ("FCM Walker") testified that she had been working on cases with Mother's other children for three and one-half years. Mother had told the case manager that her mental health was her personal business. Mother had also denied having any mental health issues and had accused FCM Walker of falsifying documents regarding the children. Mother had contacted the FBI with these allegations.

[8] FCM Walker further testified that E.O. had issues with his vision and that Mother lacked an understanding of her son's needs. According to the caseworker, Mother believed that DCS had killed E.O. at birth and had brought him back to life and that his vision issues resulted from physical abuse in his foster home. FCM Walker testified that the reasons that DCS had become

involved with the case had not been remedied because Mother had failed to address her mental health issues. FCM Walker testified that termination was in E.O.'s best interest. The guardian ad litem also testified that termination was in E.O.'s best interest.

[9] E.O.'s foster mother ("Foster Mother") testified that E.O. had undergone eye surgery at Riley Hospital and continues to see an ophthalmologist. He also receives occupational therapy, developmental therapy, and vision therapy through First Steps. Foster Mother further testified that E.O. was thriving and that she and her husband planned to adopt him and his biological sister.

[10] After DCS rested its case, Mother's counsel told the trial court that she did not need the second hearing day. In October 2018, the trial court issued an order terminating Mother's parental rights. Mother now appeals.

# Decision

[11] Mother argues that the trial court abused its discretion in denying her motion for a continuance and that there is insufficient evidence to support the termination. We address each of her contentions in turn.

### 1. Denial of Mother's Motion for a Continuance

[12] Mother first argues that the trial court abused its discretion in denying her motion for a continuance. The decision to grant or deny a continuance rests within the sound discretion of the trial court. *In re K.W.*, 12 N.E.3d 241, 243-44

(Ind. Ct. App. 2014). An abuse of discretion occurs when the party requesting the continuance has shown good cause for granting the motion and the trial court denies it. *Id.* at 244. No abuse of discretion will be found when the moving party is not prejudiced by the denial of its motion. *Id.*

[13] Mother specifically argues that the trial court abused its discretion in denying her motion for a continuance because she was not present at trial. In support of her argument, Mother directs us to *In re K.W.*, 12 N.E.3d 241, 243 (Ind. 2014), wherein the Indiana Supreme Court reversed the involuntary termination of the parent-child relationship between K.W. and his mother. The Indiana Supreme Court specifically concluded that the trial court had abused its discretion in denying mother's motion for a continuance where she was incarcerated and her release from prison was imminent. *Id.* at 249.

[14] However, the facts in *K.W.* are distinguishable from the facts of this case. Here, Mother was not incarcerated. Although she had the opportunity to attend the hearing and demonstrate her ability to assume her parental duties, she chose not to do so. Mother has failed to show good cause for granting the motion, and the trial court did not abuse its discretion in denying it.

## 2.    Sufficiency of the Evidence

Mother also argues that there is insufficient evidence to support the termination. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.,* 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K.,* 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id*. Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for

placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(B)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1231.

[18] Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she first contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in E.O.'s removal or the reasons for placement outside the parent's home will not be remedied; and (2) a continuation of the parent-child relationships poses a threat to E.O.'s well-being.

[19] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in E.O.'s removal or the reasons for his placement outside the home will not be remedied.

[20] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of his future behavior. *E.M.*, 4 N.E.3d at 643.

[21] Here, our review of the evidence reveals that E.O. was adjudicated to be a CHINS in July 2017 because of Mother's untreated mental health issues. Nearly a year later, Mother still had not successfully completed treatment for these issues and she continued to exhibit symptoms of mental illness. For example, she blamed DCS for her loss of E.O. She had contacted public figures

and the FBI with her allegations about the case. Mother had further alleged that DCS had killed E.O. at birth and had subsequently brought him back to life and that his vision issues resulted from physical abuse in his foster home. Mother had also alleged that FCM Walker had falsified paperwork about the case. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in E.O.'s placement outside the home would not be remedied. We find no error.

[22] Mother also argues that there is insufficient evidence that the termination was in E.O.'s best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. "'A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interest.'" *In re B.D.J.*, 728 N.E.2d 195, 203 (Ind. Ct. App. 2000) (quoting *Matter of Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind. Ct. App. 1992), *trans. denied, superseded by rule on other grounds*). Further, the testimony of the service providers may support a finding that termination is in the child's best interests.

*McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[23]   Here, both FCM Walker and the guardian ad litem testified that termination was in E.O.'s best interests. The testimony of these service providers, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in E.O.'s best interests. [2]

[24]   We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[25]   Affirmed.

Riley, J., and Bailey, J., concur.

---

[2] Mother also argues that her hearing was fundamentally unfair because her counsel told the trial court that she did not need the second hearing day. The Indiana Supreme Court has explained that where a parent whose rights were terminated claims on appeal that her counsel underperformed, the focus of the inquiry is whether it appears that the parent received a fundamentally fair trial whose facts demonstrate an accurate determination. *Baker v. Marion County Office of Family and Children*, 810 N.E.2d 1035, 1041 (Ind. 2014). The question is not whether counsel might have objected to this or to that, but whether counsel's overall performance was so defective that we cannot say with confidence that the conditions leading to the removal of the child from his mother's care are unlikely to be remedied and that termination is in the child's best interest. *Id.* Here, our review of the evidence reveals nothing to suggest that Mother's counsel declining the second hearing day led to an unfair trial. Rather, our review reveals that Mother received a fundamentally fair trial whose facts demonstrate an accurate determination. We can also say with confidence that the conditions leading to E.O.'s removal from his Mother's care are unlikely to be remedied and that termination is in E.O.'s best interest. We find no error.