## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 09 2020, 9:37 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ryan D. Bower
Bower Law Office, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of T.B. (Child) and S.M. (Father);

S.M (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

April 9, 2020

Court of Appeals Case No.
19A-JT-1242

Appeal from the Orange Circuit Court

The Honorable Steven L. Owen, Judge

Trial Court Cause No.
59C01-1804-JT-83

**May, Judge.**

[1] S.M. ("Father") appeals the involuntary termination of his parental rights to T.B. ("Child"). Father presents two issues for our review, which we restate as:

1. Whether the trial court erred when it adjudicated Child a Child in Need of Services ("CHINS") absent Father's admission Child was a CHINS; and

2. Whether the trial court erred when it terminated Father's parental rights to Child because the Department of Child Services ("DCS") allegedly did not offer Father services for reunification.

We affirm.

# Facts and Procedural History

[2] S.M. is the biological father of T.B., who was born to K.B.[1] ("Mother") on April 6, 2007. Since birth, Child has been in Mother's custody and Father has exercised sporadic parenting time. On July 9, 2015, DCS removed Child and his two younger siblings, E.B. and S.O.C., from Mother's home due to concerns about Mother's substance abuse and domestic violence between Mother and S.O.C.'s father ("Stepfather"). DCS placed Child in relative care with Maternal Grandparents, where he has remained for the entirety of these proceedings.

---

[1] Mother consented to Child's adoption by Maternal Grandfather (Maternal Grandmother passed away during the proceedings) and does not participate in this appeal.

[3]    On July 13, 2015, DCS filed a petition alleging Child, E.B., and S.O.C. were CHINS based on Mother's substance abuse and the domestic violence in Mother's home. The trial court held a hearing on the CHINS petition for all children and noted Mother, Father, Stepfather, and E.B.'s father were present. The trial court adjudicated Child, E.B., and S.O.C. as CHINS and in its order stated, "Parents agree that the children are children in need of services." (Ex. Vol. I at 38.)

[4]    The trial court held a dispositional hearing on November 9, 2015. Father did not appear at the hearing. The trial court's dispositional order identified Father as Child's Father but did not order Father to complete services related to Child. On May 11, 2016, Father wrote a letter to the trial court requesting that Child be placed with him. On May 16, 2016, the trial court responded to Father via letter and advised him that he was entitled to the appointment of an attorney in the CHINS case and that DCS would be able to explain the process to place Child with Father. On March 6, 2017, the trial court appointed counsel for Father.

[5]    In its report to the trial court on December 20, 2017, DCS reported, regarding Father:

> [Father] was not involved in the reasons for removal, and has not been asked to participate in any services other than those pertaining to visitation.

* * * * *

> [Father] is [sic] offered supervised visitation with [Child] but has not been consistent. The visits are supervised by Ireland Home Based Services. In August, [Father] only had one visit out of four. In November, [Father] did not have any visits. [Father] is on a 24 hour and 2 hour visit confirmation. He is not consistently participating.

(Ex. Vol. I at 140-1.) In its order on the March 14, 2018, review hearing, the trial court found, "[Father] has not visited [Child]." (*Id*. at 158.)

[6] On June 1, 2018, DCS filed its petition to terminate Father's parental rights to Child. At the initial hearing on the termination petition on July 18, 2018, Father argued that communication between Father and DCS had been difficult and the Family Case Manager confirmed that there may have been confusion between the visitation coordinator and Father. The Family Case Manager also testified about why Father was required to confirm visitation with Child:

> It is my understanding that in the past we have been picking up [Child], arranging the transportation to set up the visitation, taking [Child] to that location, and [Father] either would – didn't show up or something had happened. I don't know the fine details, but it wasn't happening as planned, so we were essentially picking up [Child] for no reason. So in order to prevent that, it was, you know, we need these confirmations to make sure we weren't picking up [Child] for no reason essentially.

(Tr. Vol. II at 19.)

[7] Based thereon, DCS requested that Father's services be stopped. The trial court denied that request, stating:

I want services to still be rendered. We will readdress that issue in the October meeting. And this is probably addressed more to you, [Father], than anybody else, but it's real important that we take advantage of this because if I come back in October and we're not doing anything, then I'll grant the request, okay? It's real important that we start – I'm giving you that opportunity because I do agree maybe – and they've had some turnover and I understand that, but it's real important in these next three months that we start making some progress. If not, if you're not going to take advantage of it, then just let – that's okay. But, I mean, we'll have to proceed a different way, okay?

(*Id.* at 21-2.) Father did not appear at the October 3, 2018, or January 2, 2019, review hearings. DCS's report to the trial court as part of the January 2, 2019, hearing indicated:

From December 2017 to August 2018, [Father] did not have any visits with [Child]. In September 2018, [Father] completed three visits with [Child]. Two visits were canceled by [Father] in September. In October 2018, [Father] completed three visits. In November 2018, [Father] completed one visit. In December 2018, [Father] did not have any visits with [Child].

(Ex. Vol. I at 184.) The report also noted that Child "expresses fear and anxiety related to living with [Father]." (*Id.* at 183.)

[8]     On April 5, 2019, the trial court held a hearing on DCS's petition to terminate Father's parental rights to Child. On June 21, 2019, the trial court entered its order terminating Father's parental rights to Child, finding, in part:

7. Father did nothing illegal to cause removal of [Child]; [Child's] removal was not a result of any action by Father.

8.  Father allowed [Maternal Grandparents] to raise [Child], allowing [Child] to become dependent on [Maternal Grandparents].

9.  Father failed to be a part of [Child's] life, even before DCS became involved with [Child], based on the following:

> a.  Father had some visits prior to removal, but the Court does not believe that Father engaged in regular visits.

> b.  Father's visits were sporadic up to time of DCS involvement.

> c.  In 2014, Father filed a Petition to Establish Parenting Time . . . .

> d.  The Court issued an order awarding Father parenting time pursuant to the Indiana Parenting Time Guidelines.

> e.  Father did not take advantage of the parenting time allotted to him since September 2014.

> f.  Father claimed that he pursued establishing paternity of [Child], but the Court finds Father's assertion not credible.

> g.  The Court filings establish that Mother through the IV-D Prosecuting Attorney filed the Petition to Establish Paternity for the purposes of obtaining a child support obligation for Father.

10.  Father failed to exercise consistent visitation with [Child] after DCS became involved in July 2015.

11. The credible evidence was that Father only exercised around three (3) overnight visits with [Child] in the past 3-4 years.

12. On November 4, 2016, Father sought to enforce parenting time through the JP/PL Cause.

13. On November 4, 2016, the permanency plan for [Child] in the CHINS case had already been changed to Adoption.

14. The Court informed Father at the JP/PL hearing in July 2017:

> a. Father needed to start establishing a relationship with [Child].
>
> b. It is very important for Father to participate in the supervised visits.
>
> c. The Court thought it would be great if Father would step up and regularly see [Child].

15. The Court finds that since 2017 the credible evidence is that Father had three (3) visits totaling eight (8) hours of time with [Child] until September 2018. Father did not step up. Father did not make [Child] a priority.

16. Father alleged that he visited consistently with [Child] since September 2018.

17. The Court disagrees with Father, as the undisputed evidence was that Father made 7 of 12 available visits with [Child] since September 2018. The Court finds that Father remained inconsistent with visits since September 2018.

18. [Child] is now almost 12 years old, and Father made a poor effort to establish a relationship with [Child].

19. Father sent text messages to [Child] in November/December 2018; these were isolated efforts by Father.

20. Court records/hearing orders indicated that Father was absent for several Court hearings concerning [Child], even after Father knew that the permanency plan for [Child] had been changed to adoption.

21. The Court finds that services for visits with [Child] were afforded to Father. The visits just didn't happen.

22. Father requested family services from DCS to foster the relationship with [Child]; however, Father first asked for family services at the Fact Finding Hearing on 4/5/2019.

(App. Vol. II at 229-30.)

# Discussion and Decision

## 1. Father's Challenge to CHINS Adjudication

[9]    Father argues that since he did not admit Child was a CHINS, that the trial court erred when it adjudicated Child as a CHINS. Father was present at the initial hearing and, sporadically, at subsequent review and permanency hearings over the following three years. At no time during the proceedings did Father object to Child's adjudication as a CHINS. "At a minimum, a party must show that it gave the trial court a bona fide opportunity to pass upon the

merits of the claim before seeking an opinion on appeal." *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004). Because Father raised this argument for the first time on appeal, it is waived. *In re S.P.H.*, 806 N.E.2d 874, 877-78 (Ind. Ct. App. 2004).[2]

[10] Waiver notwithstanding, Father's alleged issues are unavailable for appeal. It is well-established a "CHINS adjudication focuses on the conditions of the child [and] the acts or omissions of one parent can cause a condition that creates the need for court intervention." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). The trial court adjudicated Child as a CHINS based on Mother's admitted drug use and the domestic violence in Mother's home in 2015. As Mother admitted Child was a CHINS, the trial court properly adjudicated Child as such.[3] *See id*. at 106 (After mother's admission that child was a CHINS based on domestic violence in mother's home, "it was not necessary for the CHINS petition to make any allegations with respect to Father. We conclude the trial court properly adjudicated N.E. a CHINS.").

---

[2] Father also argues, in passing, that he was denied due process because the trial court did not appoint him counsel in the CHINS matter until after Child was adjudicated a CHINS. However, Father did not present this argument before the trial court, and on appeal he does not make a cogent argument, cite case law, or point to statutory language supporting his argument. Therefore, the argument is waived. *See In re S.P.H.*, 806 N.E.2d at 877-78 (party waives argument raised for the first time on appeal); *and see In re A.D.S.*, 987 N.E.2d 1150, 1156 n.4 (Ind. Ct. App. 2013) (failure to make a cogent argument waives issue on appeal), *trans. denied.*

[3] As noted in the facts, the trial court, in its order adjudicating Child a CHINS, stated, "Parents agree that the children are children in need of services." (Ex. Vol. I at 38.) Father argues the trial court's statement did not include him because the parties referenced in the order were Mother and stepfather. If Father disagreed with this statement, the time to appeal it has long since passed. However, we need not decide that issue because Mother's admission was sufficient to adjudicate Child a CHINS.

## 2. Termination of Father's Parental Rights to Child

[11] We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[12] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[13] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for

placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[14] Father does not challenge any of the trial court's findings or conclusions. Instead, he argues the trial court erred when it involuntarily terminated his parental rights to Child because DCS "offered only remarkably inconvenient, third-party provider supervised visitations as the sole services to Father." (Br. of Appellant at 12) (emphasis omitted). In his brief, Father complains that visits "occurred more than an hour and fifteen minutes (one-way) from Father's home and work," and claims "much of the visitation was logistically near

impossible without [Father] losing his job or other significant hardship." (*Id*. at 12-13.)

[15] However, "failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law." *In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009). Further, "a parent may not sit idly without asserting a need or desire for services and then successfully argue that he was denied services to assist him with his parenting." *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000). Based thereon, we conclude the trial court did not err when it terminated Father's parental rights to Child despite any alleged deficiencies in the services DCS offered to Father.

# Conclusion

[16] The trial court did not err when it adjudicated Child a CHINS based on Parents' admissions. Further, Father has not demonstrated the trial court erred when it terminated Father's parental rights to Child. Accordingly, we affirm.

[17] Affirmed.

Crone, J., and Pyle, J., concur.